# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **JANICE LAROSA, on Behalf of NOEL LAROSA, a Minor,** | |
| Plaintiff, | Case No. 12 C 932 |
| v. | Hon. Harry D. Leinenweber |
| **WALGREEN CO. and TAKE CARE HEALTH SYSTEMS, INC.,** | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. For the reasons stated herein, the Motion is granted.

### I. BACKGROUND

Plaintiff Janice LaRosa (hereinafter, the "Plaintiff" or "Janice") brings this disability discrimination action on behalf of her minor son, Noel LaRosa ("Noel"). Defendants have moved for summary judgment. The facts that follow are undisputed except where noted.

Before getting to the alleged discrimination, some background on Noel is pertinent. Noel was born with amniotic band syndrome, a congenital disorder that resulted for him in birth defects. Many of Noel's fingers and toes are missing, deformed, or weakened. Noel's surgery to repair a cleft palate left him with scars on his face. Because he has deformities in his nasal passage, his speech

is difficult to understand. Noel spent the first seven years of his life in a Chinese orphanage, until Janice and her husband brought him to the United States as their adopted son. Now a teenager, Noel maintains an active, social lifestyle despite his limitations. Janice testified that Noel is very good at hiding his hands by folding them or putting them in his pockets; even friends who have known Noel for years do not realize the extent of his deformities. Noel concentrates his athletic efforts on soccer, a sport that does not require much manual dexterity and allows Noel to develop and use his lower-body strength and agility.

The alleged discrimination took place on August 10, 2011, the first day of tryouts for the soccer team at New Trier High School. Noel, a freshman at this point, had been looking forward to and preparing for this day for some time. When they arrived at the tryout that morning, Janice and Noel were surprised to learn that Noel could participate only if he had completed a sports physical (apparently, a poorly-worded letter from the school led them to believe that the physical was necessary only if Noel made the team). The coach agreed to let Noel join the tryout the next morning if he completed the physical by then. Understandably, Janice and Noel were taken by an urgent need to complete the physical that day – otherwise Noel would miss his chance to try out for the school team his freshman year, all but guaranteeing that he would never play for the school in subsequent years as well.

Noel's primary physician was out of the office, so Janice took him to the Take Care Clinic in the Northfield Walgreens ("the Clinic"). Once there, Janice filled out and turned in a "preparticipation form" that detailed Noel's medical history. Because relevant details about Noel's birth family remain a mystery, Janice was unable to answer some of the questions about Noel's family medical history. Clinic staff uses the questions about a patient's family history to screen for latent heart or other conditions that could pose a risk if the child engages in rigorous exercise. If a patient does not have his complete family medical history, the Clinic will not clear him for sports without first referring the patient to his primary physician for more involved tests (which the Clinic is not equipped to conduct on-site).

A medical assistant named Jennifer Ayala took the form and began Noel's exam by checking his "vitals," such as his blood pressure, pulse, vision, and height. Toward what appeared to be the end of this part of the examination, Ayala realized that she needed to weigh Noel, so she asked him to take off his shoes and step on the scale. What happened next forms one of the central factual disputes in this case: both Noel and Janice testified in their depositions that Ayala looked at Noel's feet and appeared shocked by what she saw. Ayala testified that she typically does not look at a patient's feet and does not recall seeing Noel's

feet.  Either way, Ayala left the room and returned a few minutes later to take Janice and Noel to see Leigh Anne Harmon, the nurse practitioner who conducts the actual examination.

Harmon asked Janice why portions of the medical history form were incomplete, and Janice explained that, because Noel was adopted, she lacked the information necessary to answer the questions.  The parties agree that Harmon then terminated the physical, but they disagree on the reason given.  Both Noel and Janice testified that Harmon said repeatedly that the Clinic does not perform physicals on adopted children.  Harmon denies giving that reason and says that she explained to Janice the importance of family medical history.  Harmon also indicated that she cancelled the examination because she realized that she was not going to be able to clear Noel to participate in sports, and she did not want Ms. LaRosa to be charged for an examination in which she would not be able to clear Noel.  Harmon Decl. ¶ 13.  Janice and Noel left the room, and Harmon called her supervisor, Audrey Collins, who supported Harmon's judgment.  With the examination cancelled, and with insufficient time left in the day to complete another physical, Noel was left with no medical clearance and no chance to make the team.

Plaintiff understands that the Clinic may not have been able to clear Noel to play sports without first understanding his family medical history.  What Plaintiff protests, however, is the Clinic's

"wholesale refusal to provide him with accommodation." ECF No. 94 at 8.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F ED. R. C IV. P. 56(a). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009).

## III. DISCUSSION

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). For the purposes of this Motion, Defendants do not dispute that Noel is an individual with a disability.

For Plaintiff to survive summary judgment, she must show a genuine factual dispute as to whether the discrimination "result[ed] from the handicap and from the handicap alone." *Mallett v. Wis. Div. of Vocational Rehab.,* 130 F.3d 1245, 1257 (7th Cir. 1997) (quotation omitted). Plaintiff concedes that she could

"wholesale refusal to provide him with accommodation." ECF No. 94 at 8.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F ED. R. C IV. P. 56(a). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009).

## III. DISCUSSION

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). For the purposes of this Motion, Defendants do not dispute that Noel is an individual with a disability.

For Plaintiff to survive summary judgment, she must show a genuine factual dispute as to whether the discrimination "result[ed] from the handicap and from the handicap alone." *Mallett v. Wis. Div. of Vocational Rehab.,* 130 F.3d 1245, 1257 (7th Cir. 1997) (quotation omitted). Plaintiff concedes that she could

not provide Noel's family medical history.  Clinic medical staff had no way to know whether Noel's blood relatives had a history of cardiac and pulmonary ailments.  Without the family medical history, the Clinic would have had to conduct more extensive tests before clearing Noel to play sports.  The Clinic lacks the equipment necessary for such tests, and there is no dispute that the Clinic would not have been able to clear Noel for sports that day, regardless of whether it finished the examination or cancelled it only part of the way through.

Plaintiff argues that Noel was subjected to discrimination when the Clinic decided to cancel the examination instead of completing the examination and not clearing Noel for sports. Plaintiff lacks any direct evidence of discrimination: there is no evidence that any of Defendants' employees stated that they were turning Noel away because of his disability.  Of course, it does not matter that neither Ayala nor Harmon commented on Noel's feet – such smoking-gun evidence is rare and certainly not necessary to prove discrimination.  *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983) (explaining, in the context of employment discrimination, that "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes").

Plaintiff is left trying to prove this case through circumstantial evidence. Plaintiff contends that Ayala gave her a concerned look once she saw Noel's feet.  From there, Ayala left

the room and spoke with Harmon, although it is unknown what she said.  Ayala then returned to Janice and Noel to take them to Harmon, who ended the examination.  Although the Court does not weigh the evidence when ruling on a motion for summary judgment, the Court can allow the case to proceed only if it can determine that Plaintiff has put forth enough evidence to create a genuine factual dispute.  Plaintiff's evidence is too speculative and thus insufficient to allow a reasonable jury to infer that Defendants discriminated against Noel on the basis of a disability. "Inferences that are supported only by speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004).

As further support, the Court notes that the Rehabilitation Act speaks in terms of "denied [] benefits."  29 U.S.C. § 794(a). Plaintiff's claim is unusual in that the benefit sought (or at least one that Plaintiff concedes would not have violated the Act) is nearly identical to the one Noel received.  If the Clinic would have been in compliance with the Act had it completed the examination and not cleared Noel to play sports, it is hard to see how the Clinic could violate the Act by simply cancelling the examination. And Plaintiff concedes that the Clinic could not have cleared Noel for sports that day – the Clinic would have had to refer Noel to his primary care physician for more involved tests. Certainly it appears that confusion on that day caused Janice and

Noel some anxiety, disappointment, and frustration that might have been avoided. But either way, Noel would not have gotten his medical clearance in time to join the tryout the next day. In other words, the "benefit" that Plaintiff seeks is illusory, and not one protected by the Rehabilitation Act.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [ECF No. 68] is granted.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court

**DATE: 3/25/2014**